## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 15-10338-FDS** |
| | ) | |
| **14.  ERICK ARGUETA LARIOS** | ) | |
| **a/k/a "LOBO,"** | ) | |
| | ) | |
| **Defendant** | ) | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT THREE OF THE INDICTMENT AS MULTIPLICITOUS

The United States of America opposes the motion filed by the defendant, Erick Argueta Larios, a/k/a "Lobo," seeking to dismiss Count Three of the Fifth Superseding Indictment. D.1663, 1664. The defendant claims that Count Three—charging a conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. §846—is multiplicitous with Count Two—charging a conspiracy to conduct enterprise affairs through a pattern of racketeering activity in violation of 18 U.S.C. §1962(d)—and thus he is subject to multiple punishments for the same conduct in violation of the Double Jeopardy Clause. This claim is meritless. It is wholly within Congress' power to define criminal offenses and prescribe punishments; and where, as here, Congress has defined one course of criminal conduct as two crimes, each deserving of independent punishment, the Double Jeopardy Clause is not violated. The defendant's motion should be denied.

## RELEVANT BACKGROUND

Count Two of the Fifth Superseding Indictment (the "Indictment") charges the defendant, together with dozens of other named and unnamed members of La Mara Salvatrucha, or MS-13, with conspiring to conduct the affairs of the MS-13 criminal enterprise

through a pattern of racketeering activity, in violation of 18 U.S.C. §1962(d). The various means and methods by which the defendant and his co-conspirators conspired to conduct and participate in the affairs of the MS-13 enterprise allegedly included: using violence, including murder and attempted murder, to protect and expand MS-13's criminal operations; promoting a climate of fear through violence and threats of violence to intimidate gang rivals and potential witnesses to MS-13's illegal activities; promulgating and enforcing rules designed to protect and further the goals of the MS-13 enterprise, such as requiring MS-13 members to attack and kill rival gang members and informants, rewarding MS-13 members who murdered rivals and informants by elevating their rank within MS-13, and disciplining MS-13 members who violated the rules; requiring MS-13 members to pay dues and generate income that was used to buy guns, drugs, and cellular telephones to facilitate the MS-13 criminal enterprise and support incarcerated MS-13 members in the United States and El Salvador; engaging in robbery and illegal drug trafficking to generate income for MS-13; and possessing, carrying, and using firearms and other weapons to protect MS-13's criminal operations and members from theft, robbery, and competition from others.

Relevant to the defendant, a member of the MS-13 Eastside Locos Salvatrucha ("ESLS") clique, Count Two of the Indictment specifically alleges that ESLS members participated in and furthered the criminal activities of the MS-13 enterprise by, among other things: disciplining an ESLS clique member who violated MS-13 rules by not coming to the aid of a fellow MS-13 member who was confronted by rival gang members through a 13-second beating; promoting an MS-13 member who murdered a rival gang member to "homeboy" in ESLS through a 13-second beating; and trafficking kilogram quantities of cocaine to generate income for MS-13.

Count Three of the Indictment charges the defendant and four other MS-13 conspirators with conspiring to distribute and possess with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. §846. The drug-trafficking conspiracy alleged in Count Three involves the same defendants, the same type and quantity of drug, and the same time frame as the drug-trafficking conspiracy that is described in Count Two as one of several types of racketeering activity that the defendant and his MS-13 co-conspirators agreed would be committed in furtherance of the MS-13 RICO conspiracy.

## ARGUMENT

The defendant's claim that Counts Two and Three are multiplicitous, subjecting him to multiple punishments for the same offense in violation of the Double Jeopardy clause, ignores clear, settled precedent from the Supreme Court, the First Circuit, and other courts of appeal holding that a single criminal offense may be punished cumulatively if, as is the case here, Congress intended that result.[1]

The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. In the context of a single criminal prosecution like this one, the clause "protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). This guarantee simply prevents "the sentencing court from prescribing greater punishment than the legislature

---

[1] Although the defendant frames the issue as involving "multiplicitous" counts, that term usually refers to situations where a defendant is charged with multiple violations of a single statute. *See, e.g.*, *United States v. Gordon*, 875 F.3d 26, 32 (1st Cir. 2017) ("[M]ultiplicity means that a single crime (or 'unit of prosecution') has been charged as multiple crimes, each of which is to be punished separately."); *United States v. Pires*, 642 F.3d 1, 15 (1st Cir. 2011) (discussing whether multiple counts charging a violation of 18 U.S.C. §2252(a)(2) were multiplicitous). In this case, the defendant is charged with two conspiracies in violation of two separate statutes, making the typical multiplicity analysis inapt.

intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983). It does not prohibit the legislature from punishing the same act or course of conduct under different statutes. *Albernaz v. United States*, 450 U.S. 333, 344 (1981); *Whalen v. United States*, 445 U.S. 684, 689 (1980) ("[T]he power to define criminal offenses and to prescribe the punishments to be imposed upon those found guilty of them [] resides wholly with the Congress."). "Where Congress intended, as it did here, to impose multiple punishments, imposition of such sentences does not violate the Constitution." *Id.* at 344 ("[T]he question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed."); *United States v. Hart*, 933 F.2d 80, 85 (1st Cir. 1991). "Ultimately, [the Court's] only task is to determine whether Congress intended to impose multiple punishments." *United States v. Ayala*, 601 F.3d 256, 265 (4th Cir. 2010) (holding that Congress intended to impose multiple punishments for single murder conspiracy charged under both RICO and VICAR statutes). The starting point for discerning Congress' intent to impose multiple punishments, or, put another way, to determine whether two offenses are considered the same for double jeopardy purposes, is set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932): "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether they are two offenses or only one, is whether each provision requires proof of a fact which the other does not."

In this case, the Indictment charges the defendant with a RICO conspiracy, in violation of 18 U.S.C. §1962(d), and a cocaine trafficking conspiracy, in violation of 21 U.S.C. §846. As a threshold matter, the government disagrees with the defendant's characterization of the RICO conspiracy charged in Count Two as "only charg[ing] [him] with violation of control[led] substances not any other racketeering activity." D.1663 at 1 n.1. In fact, the RICO

conspiracy charged in Count Two of the Indictment alleges that the defendant and his co-conspirators conspired to further the MS-13 criminal enterprise through a pattern of racketeering activity that included not just drug trafficking, but also murder, attempted murder, robbery, and armed robbery. *See* Indictment ¶26 (listing numerous federal and state law offenses that constituted the pattern of racketeering activity).

While Count Two specifically alleges that the defendant *himself* engaged in a conspiracy to distribute cocaine in furtherance of the MS-13 racketeering conspiracy, the defendant's guilt on Count Two does not depend on proof that he personally agreed to distribute cocaine or that he actually did so. *See, e.g.*, *Laverty v. Massad*, Crim. No. 08-40126-FDS, 2009 WL 1873646, at *6 (D. Mass. Mar. 10, 2009) (Saylor, J.) (holding that there is "no[ ] need to allege that each conspirator agreed to commit (or actually committed) two or more predicate acts," and "a defendant may be part of a RICO conspiracy even if he has not committed a substantive RICO violation"). Rather, the defendant may be found guilty of the RICO conspiracy based on proof that he agreed to join the conspiracy knowing that the objective of the MS-13 enterprise was to engage in a pattern of racketeering activity involving murder, attempted murder, robbery, drug trafficking, or any combination thereof.

Properly construed, it is clear that the RICO conspiracy and the drug-trafficking conspiracy charged in the Indictment are two different offenses under the *Blockburger* test, as each requires proof of a fact that the other does not. The RICO conspiracy charge requires proof that the defendant was employed by or associated with an "enterprise" and conducted or participated, directly or indirectly, in the affairs of the enterprise through a "pattern of racketeering," requirements not present in the drug-conspiracy charge. In contrast, the drug-

conspiracy charge requires an agreement to violate the narcotics laws, which is not a necessary element of the RICO conspiracy because the Indictment alleges that the defendant and his co-conspirators agreed to engage in a pattern of racketeering encompassing more than just drug trafficking—namely, murder, attempted murder, and robbery.

Because the RICO conspiracy contains different elements than the drug-trafficking conspiracy, the two conspiracies are not the same offense for double jeopardy purposes and may be punished separately. *See, e.g., Albernaz*, 450 U.S. at 343 (holding that conspiracy to import marijuana and conspiracy to distribute marijuana are two separate offenses and may be punished separately); *United States v. Marino*, 277 F.3d 11, 39 (1st Cir. 2002) (holding that RICO conspiracy and substantive RICO predicate offense are two separate offenses that may be punished separately); *Ayala*, 601 F.3d at 265 (holding that RICO conspiracy and VICAR murder conspiracy, which was a predicate offense to RICO conspiracy, were two separate offenses that may be punished separately); *United States v. Luong*, 393 F.3d 913, 917 (9th Cir. 2004) (holding that RICO conspiracy and Hobbs Act robbery conspiracy, which was a predicate offense to RICO conspiracy, were two separate offenses that may be prosecuted and punished separately).

In an effort to avoid this conclusion, the defendant insists, "the *Blockburger* test is of questionable value in conspiracy double jeopardy issues" because a RICO conspiracy "can be committed in many different ways and consideration of the *Blockburger* analysis of the statutory elements alone is insufficient but consideration of the precise allegations is necessary." D.1664 at 5. Were the RICO conspiracy charge in this case predicated solely on a pattern of racketeering activity involving only drug trafficking, the defendant's argument might have some force. *See, e.g., Whalen*, 445 U.S. at 694 (considering specific allegations

against defendant and holding that where defendant was charged with rape and the specific form of felony murder that prohibited killing in the course of rape, the two offenses were the same for double jeopardy purposes). As just discussed, however, Count Two charges the defendant with a RICO conspiracy that involves racketeering activity other than drug trafficking, and the two conspiracies are charged under separate statutes; thus, the *Blockburger* analysis, which focuses on the elements of the offenses, and not the "totality of the circumstances" test advocated by the defendant, controls. *See United States v. Bennett*, 44 F.3d 1364, 1371-72 (8th Cir. 1995) (refusing to apply "totality of the circumstances" test to discern whether RICO conspiracy and drug conspiracies were the same offense and explaining that *Blockburger* test should be used when two conspiracies are charged under different statutes).

Even if the Court were to credit the defendant's myopic view of the RICO conspiracy charge as involving only the same conduct as the drug-trafficking conspiracy, which it should not, the result is the same. The dispositive question in the double jeopardy analysis is whether Congress "intended to allow multiple punishments for RICO conspiracies and conspiracies to commit the underlying predicate offenses." *United States v. Kragness*, 830 F.2d 842, 864 (8th Cir. 1987). As numerous courts of appeal have concluded, Congress did so intend. *Id*. ("We therefore hold that the defendants' convictions for RICO conspiracy and for one or more drug conspiracies do not offend the Double Jeopardy Clause."); *see also United States v. Garcia*, 754 F.3d 460, 474 (7th Cir. 2014) (same, RICO conspiracy and extortion conspiracy); *Luong*, 393 F.3d at 915-16 (9th Cir.) (same, RICO conspiracy and Hobbs Act robbery conspiracy); *United States v. White*, 116 F.3d 903, 932 (D.C. Cir. 1997) (same, RICO conspiracy and drug conspiracy); *United States v. Deshaw*, 974 F.2d 667, 671-72 (5th Cir. 1992) (same, RICO conspiracy and drug conspiracy); *United States v. Johnson*, 911 F.2d 1394, 1397-98 (10th Cir.

7

1990) (same, RICO conspiracy and drug conspiracy) (10th Cir. 1990); *United States v. Boldin*, 772 F.2d 719, 729 (11th Cir. 1985) (same, RICO conspiracy/substantive RICO and drug conspiracy/distribution); *United States v. Schell*, 775 F.2d 559, 568 (4th Cir. 1985) (same, RICO conspiracy and drug conspiracy); *United States v. Thomas*, 757 F.2d 1359, 1370-71 (2d Cir. 1985) (same, RICO conspiracy and drug conspiracy). *Cf. Marino*, 277 F.3d at 39 (holding that RICO conspiracy and a substantive RICO violation can be punished cumulatively and stating, "[t]he Supreme Court has recognized that 'in most cases separate sentences can be imposed for the conspiracy to do an act and for the subsequent accomplishment of that end.'") (quoting *Iannelli v. United States*, 420 U.S. 770, 777-78 (1975)).

As these and other courts have recognized, RICO is intended to supplement, not replace, existing criminal provisions. *White*, 116 F.3d at 932 (collecting cases). The RICO statute itself provides that "nothing in [RICO] shall supersede any provision of Federal . . . law imposing criminal penalties . . . in addition to those provided for in [RICO]." Organized Crime Control Act of 1970, Pub. L. No. 91-452, §904(b), 84 Stat. 947 (1970). The statutes that criminalize RICO and drug conspiracies are set forth in different titles of the United States Code and are intended to deter two different kinds of criminal activity: conspiracy to engage in racketeering and conspiracy to violate narcotics laws. *Ayala*, 601 F.3d at 265-66; *Deshaw*, 974 F.2d at 672. Moreover, there is nothing in the RICO statutory scheme to suggest that Congress intended to preclude separate punishments for separate convictions. *United States v. Rone*, 598 F.2d 564, 571 (9th Cir. 1979). "As a result, the circuits that have held drug conspiracies to be lesser included offenses of RICO conspiracies or have not resolved the issue nevertheless allow cumulative sentences to stand on the ground that Congress 'intended to permit, and perhaps sought to encourage, the imposition of cumulative sentences for RICO

offenses and the underlying crimes.'" *White*, 116 F.3d at 932 (quoting *Kragness*, 830 F.2d at 864).

## CONCLUSION

For all of the foregoing reasons, the government respectfully requests that the Court deny the defendant's motion to dismiss Count Three of the Fifth Superseding Indictment as multiplicitous with Count Two.

Respectfully submitted,

WILLIAM D. WEINREB
Acting United States Attorney

By:   */s/ Kelly Begg Lawrence*

KELLY BEGG LAWRENCE
CHRISTOPHER POHL
Assistant United States Attorneys

Date: December 14, 2017

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the Court's Electronic Court Filing (ECF) system on December 14, 2017, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

By:   */s/ Kelly Begg Lawrence*

KELLY BEGG LAWRENCE
Assistant United States Attorney