UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 15-10338-14-FDS |
| ERICK ARGUETA LARIOS a/k/a "Lobos," | ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM AND ORDER ON DEFENDANT LARIOS'S MOTION TO DISMISS
COUNT 3 AS MULTIPLICITOUS WITH COUNT 2**

**SAYLOR, J.**

Erick Argueta Larios is one of 61 defendants named in the indictment in this case. He is charged in Count 2, conspiracy to conduct enterprise affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d), and Count 3, conspiracy to distribute cocaine and possess cocaine with intent to distribute in violation of 21 U.S.C. § 846. He has filed a motion to dismiss Count 3 as against him on the ground that it is multiplicitous with Count 2 and therefore violates the Double Jeopardy Clause of the Constitution. For the following reasons, that motion will be denied.

**I.    Background**

   **A.    Factual Background**

The facts are set forth as described in the Fifth Superseding Indictment.

Count 2 charges Larios and 42 other defendants with conspiracy to conduct enterprise affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d), "from a time unknown to the Grand Jury and continuing until in or about January 2016, at East Boston,

Chelsea, Somerville, Revere, Cambridge, and Everett, and elsewhere in the District of Massachusetts, in Richmond, in the Eastern District of Virginia, in Salem, and elsewhere in the District of New Hampshire, in the District of Arizona, in the District of New Jersey, and at other places presently known and unknown." (Fifth Superseding Indict. ¶ 25).

The indictment alleges that the enterprise is La Mara Salvatrucha, or MS-13, a transnational criminal organization made up largely of immigrants from El Salvador. (*Id.* ¶¶ 2, 5). It alleges that MS-13 is an "ongoing organization whose members functioned as a continuing unit that had a common purpose" of achieving certain goals—namely, (a) "[p]reserving and protecting the power, territory, reputation, and profits of the enterprise through the use of intimidation, violence, threats of violence, assaults, and murder"; (b) promoting the enterprise and its criminal activities; (c) keeping victims and community members in fear; (d) "[p]roviding financial support and information to MS-13 members, including those incarcerated in the United States and El Salvador"; and (e) assisting MS-13 members who had committed crimes on behalf of MS-13 from being apprehended and prosecuted by law enforcement. (*Id.* ¶¶ 23-24).

The indictment further alleges that the pattern of racketeering activity consisted of multiple acts involving trafficking of cocaine, cocaine base, heroin, and marijuana; multiple acts involving murder, attempted murder, assault with intent to murder, armed assault with intent to murder, and conspiracy to commit murder; and multiple acts involving robbery, armed robbery, armed assault with intent to rob, attempted robbery, and conspiracy to rob. (*Id.* ¶ 26).

Among other "means and methods of the conspiracy," the indictment alleges that certain of the racketeering acts the defendants allegedly conspired to commit actually occurred, including six murders, twenty attempted murders, four conspiracies to distribute drugs, and one robbery. (*Id.* ¶¶ 29-31). Of those specified racketeering acts, the only one that alleges

2

involvement by Larios is a conspiracy to distribute cocaine and possess cocaine with intent to distribute and to distribute in violation of 21 U.S.C. § 846. The indictment alleges that the drug conspiracy existed from February 2014 at the latest to December 2014 at the earliest, occurred in Saugus, Massachusetts, Salem, New Hampshire, and elsewhere in the Districts of Massachusetts and New Hampshire, and involved more than five kilograms of cocaine. (*Id.* ¶ 30(b)).

Count 3 charges Larios and three other defendants with conspiracy to distribute cocaine. (*Id.* ¶¶ 32-34). That conspiracy appears to be the same conspiracy alleged to have been one of the "means and methods" of the racketeering conspiracy, in that it is alleged to have occurred from February 2014 at the latest to December 2014 at the earliest, to have occurred in Saugus, Massachusetts, Salem, New Hampshire, and elsewhere in the Districts of Massachusetts and New Hampshire, and to have involved five kilograms or more of cocaine.

### B. Procedural Background

In order to make the trial in this case manageable, the defendants were preliminarily severed into four groups on April 6, 2017. Larios is in "Group Three," the trial of which is set to begin on January 29, 2018.

On November 30, 2017, Larios filed a motion to dismiss Count 3 as multiplicitous. The government filed an opposition on December 14, 2017.

## II. Legal Standard

The Double Jeopardy Clause prevents a person from being tried or punished twice for the same conduct. U.S. Const. amend. V ("[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ."). It prohibits "multiplicity," or the charging of a single offense in more than one count of an indictment, because a multiplicitous indictment might lead to multiple sentences for the same offense. *United States v. Pires*, 642 F.3d 1, 15 (1st Cir. 2011); *United States v. Maling*, 737 F. Supp. 684, 696-97 (D. Mass. 1990). However,

3

"[m]ultiple punishments for the same offense . . . are permissible if the legislature so intended." *United States v. LeMoure*, 474 F.3d 37, 43 (1st Cir. 2007) (citing *Missouri v. Hunter*, 459 U.S. 359, 365 (1983)). Thus, "[t]he critical inquiry is whether Congress intended to punish each statutory violation separately." *Jeffers v. United States*, 432 U.S. 137, 155 (1977).

The test for determining whether an indictment is impermissibly multiplicitous was laid out by the Supreme Court in *Blockburger v. United States*, 284 U.S. 299 (1932): "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 304; *see also United States v. Laguna-Estela*, 394 F.3d 54, 56-57 (1st Cir. 2005).

Conspiracies, however, raise special concerns, "because of the possibility that the government literally could comply with [the *Blockburger* test] while actually carving up a single conspiracy to commit several crimes into separate prosecutions." *Laguna-Estela*, 394 F.3d at 57 (describing the problem in a case where two conspiracies were charged under the same statute). In determining whether two conspiracies are in fact the same for purposes of double jeopardy, the First Circuit has identified five factors to review: "(1) the time during which the activities occurred; (2) the persons involved in the conspiracies; (3) the places involved; (4) whether the same evidence was used to prove the two conspiracies; and (5) whether the same statutory provision was involved in both conspiracies." *United States v. Booth*, 673 F.2d 27, 29 (1st Cir. 1982); *see United States v. Garcia-Rosa*, 876 F.2d 209, 228 (1st Cir. 1989)).

### III. Analysis

The racketeering conspiracy statute, 18 U.S.C. § 1962(d), provides: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." As relevant here, subsection (c) provides: "It shall be unlawful for any person

4

employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

The drug conspiracy statute, 21 U.S.C. § 846, provides: "Any person who attempts or conspires to commit any offense described in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." As relevant here, § 841(a)(1) of that subchapter provides: "[I]t shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance. . . ." 21 U.S.C. § 841(a)(1).

It is clear that the indictment here passes the *Blockburger* test. The RICO-conspiracy count requires proof of an enterprise, affecting interstate commerce, and an agreement that the defendant or some other member of the conspiracy would commit at least two racketeering acts in furtherance of that enterprise. None of that is required to prove a conspiracy to distribute cocaine. Conversely, proof that Larios himself agreed to distribute cocaine is required to prove that he is guilty of a conspiracy to distribute cocaine, but not the RICO conspiracy, which only requires proof that he agreed that someone would commit at least two racketeering acts, not that he himself would commit any particular racketeering act. As each count requires proof of something the other does not, the indictment is not multiplicitous under *Blockburger*.

As to the special factors surrounding multiple conspiracy claims, the indictment passes muster under that standard as well.

Larios argues that the "participants and events in both counts are identical," and that "the

5

criminal activity in the Racketeering Conspiracy charges him only with illegal drug activity all in violation of 21 U.S.C. § 846 and not any murders or attempted murders or other prohibited racketeering activity." (Mem. in Supp. Mot. to Dismiss at 3, 5). But that is a misreading of the indictment. First, Count 2 does not "charge" Larios with illegal drug activity; it charges him with racketeering conspiracy. The government need not prove any particular predicate act (such as conspiracy to distribute cocaine), only that the defendant agreed that certain types of acts would be committed. *See Laverty v. Massad*, 2009 WL 1873646, at *6 (D. Mass. Mar. 10, 2009). Second, Count 2 alleges that Larios agreed to something entirely different from distributing cocaine—it alleges that he agreed to further an enterprise involved in murder, robbery, *and* drug trafficking. He need not personally have actually participated in or agreed to participate in all those types of racketeering activity—he can be guilty of racketeering conspiracy as long as he agreed that someone would commit those types of racketeering acts. The allegation of conspiracy to distribute cocaine in the "means and methods" of Count 2 is neither necessary nor sufficient to prove the racketeering conspiracy of Count 2.

With respect to the time during which the activities occurred, the two counts are potentially overlapping but not identical—the RICO conspiracy is alleged to have occurred from a time unknown until January 2016, whereas the drug-trafficking conspiracy is alleged to have occurred from about February 2014 to December 2014. Similarly, the persons involved in the conspiracies are overlapping but not identical—all the defendants charged with Count 3 are also charged with Count 2. Likewise, the places involved are overlapping but not the same. As to whether the same evidence will be used to prove the two conspiracies, it seems that because the government must prove, for Count 2, an agreement that is broader than and of a different character from Count 3, there will necessarily be some different evidence.

But most importantly, the conspiracies are charged under different statutory provisions. While RICO undeniably refers to other crimes in defining racketeering activity, Congress chose to create the whole new crime of "racketeering," separate from those crimes, which is strong evidence that it intended racketeering, including racketeering conspiracy, to be punished separately. *See Whalen v. United States*, 445 U.S. 684, 689 (1980) ("[T]he power to define criminal offenses and to prescribe the punishments to be imposed upon those found guilty of them[] resides wholly with the Congress."); *cf. United States v. Marino*, 277 F.3d 11, 39 (1st Cir. 2002) (holding that RICO conspiracy can be punished separately from substantive RICO predicate offenses). Indeed, many Courts of Appeals have held that Congress intended for racketeering conspiracy to be punished separately from conspiracies that would constitute substantive predicate racketeering acts. *United States v. Garcia*, 754 F.3d 460, 474 (7th Cir. 2014) (punishing RICO conspiracy and extortion conspiracy separately); *United States v. Ayala*, 601 F.3d 256, 265 (4th Cir. 2010) (punishing RICO conspiracy and VICAR conspiracy separately); *United States v. Luong*, 393 F.3d 913, 915-17 (9th Cir. 2004) (punishing RICO conspiracy and Hobbs Act robbery conspiracy separately); *United States v. White*, 116 F.3d 903, 932 (D.C. Cir. 1997) (punishing RICO conspiracy and drug conspiracy separately); *United States v. Deshaw*, 974 F.2d 667, 671-72 (5th Cir. 1992) (same); *United States v. Johnson*, 911 F.2d 1394, 1397-98 (10th Cir. 1990) (same); *United States v. Kragness*, 830 F.2d 842, 864 (8th Cir. 1987) (same); *United States v. Boldin*, 772 F.2d 719, 729 (11th Cir. 1985) (same) *United States v. Thomas*, 757 F.2d 1359, 1370-71 (2d Cir. 1985) (same).[1]

---

[1] Indeed, this factor could be considered dispositive, as the five-factor test is normally applied in situations where there have been multiple conspiracy counts charged under the same statute. *See Laguna-Estela*, 394 F.3d at 57 (expressing concern that a single conspiracy could be charged as two counts under the same statute and applying the five-factor test to two counts of conspiracy with intent to distribute heroin); *United States v. Hart*, 933 F.2d 80, 84-87 (1st Cir. 1991) (applying the test to two counts of conspiracy with intent to possess and distribute cocaine); *United States v. Gomez-Pabon*, 911 F.2d 847, 860-62 (1st Cir. 1990) (applying the test to two counts of conspiracy to import drugs); *Garcia-Rosa*, 876 F.2d at 227-28 (expressing skepticism about the "appropriate scope of the 'same

7

In sum, even under the five-factor test, it is clear that Congress intended to separately punish an agreement to further the affairs of an enterprise through a pattern of racketeering activity on the one hand, and an agreement to distribute cocaine (or possess cocaine with intent to distribute) on the other.  It is likewise clear that the indictment here is not multiplicitous and does not violate the Fifth Amendment.

## IV.    Conclusion

For the foregoing reasons, Larios's motion to dismiss Count 3 of the fifth superseding indictment is DENIED.

**So Ordered.**

Dated:  January 8, 2018

/s/  F. Dennis Saylor
F. Dennis Saylor, IV
United States District Judge

---

evidence' test when a defendant is successively charged with violation of *different* statutory provisions," but applying the five-factor test to a claim of double jeopardy for two counts of conspiring to possess cocaine with intent to distribute); *Booth*, 673 F.2d at 28-29 (applying the test to two counts of conspiring to possess marijuana with intent to distribute).