UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 15-10338-FDS |
| | ) | |
| 6.  HERZZON SANDOVAL<br>    a/k/a "CASPER," | ) | |
| | ) | |
| 7.  EDWIN GUZMAN<br>    a/k/a "PLAYA," | ) | |
| | ) | |
| 11. CESAR MARTINEZ<br>    a/k/a "CHECHE," | ) | |
| | ) | |
| 14. ERICK ARGUETA LARIOS<br>    a/k/a "LOBO," | ) | |
| | ) | |
| Defendants | ) | |

**GOVERNMENT'S MOTION IN LIMINE TO
ADMIT CO-CONSPIRATOR STATEMENTS**

The United States of America respectfully submits this motion in limine requesting that the Court admit out-of-court statements made by the defendants' co-conspirators as substantive evidence at trial pursuant to Federal Rule of Evidence 801(d)(2)(E). To the extent that any of the defendants challenge the admissibility of the statements offered under Rule 801(d)(2)(E), the government requests that the Court provisionally admit the statements at trial and make the necessary finding of admissibility at the close of evidence, in accordance with *United States v. Petrozziello*, 548 F.2d 20 (1st Cir. 1977).

    A.    **Legal Standard for Admissibility of Co-Conspirator Statements**

Rule 801(d)(2)(E) provides that statements "offered against an opposing party and . . . made by the party's coconspirator during and in furtherance of the conspiracy" are not hearsay. Such statements are admissible at trial for the truth of the matter asserted if the

proponent establishes, by a preponderance of the evidence, that (1) a conspiracy existed; (2) the defendants were members of the conspiracy, (3) the declarants were also members of the conspiracy, and (4) the declarants' statements were made in furtherance of the conspiracy. *United States v. Diaz*, 670 F.3d 332, 348 (1st Cir. 2012). "How this works is that a judge conditionally admits the alleged coconspirator statements, 'subject to a later finding by the [judge], supported by extrinsic evidence (other than the statements themselves),' sufficient to show the conspiracy and the speaker's involvement in it." *United States v. George*, 761 F.3d 42, 54-55 (1st Cir. 2014) (quoting *United States v. Sepulveda-Hernandez*, 752 F.3d 22, 30 n.2 (1st Cir. 2014)). A district court's finding of admissibility under Rule 801(d)(2)(E) is known in this circuit as a *Petrozziello* ruling. *United States v. Ciresi*, 697 F.3d 19, 25 (1st Cir. 2012).

In determining the admissibility of co-conspirator statements, the Court may consider any relevant information, including the statements being offered for admission. *Bourjaily v. United States*, 483 U.S. 171, 181 (1987); *United States v. Rivera-Santiago*, 872 F.2d 1073, 1092-93 (1st Cir. 1989). However, co-conspirator statements alone cannot establish the existence of a conspiracy embracing both the declarant and the defendant; some extrinsic proof of the conspiracy's existence is required. *United States v. Capleton*, 350 F.3d 231, 241 (1st Cir. 2003). Additionally, to be admissible, co-conspirator statements must have been made "during" and "in furtherance of" a conspiracy. To be deemed "in furtherance," a statement "need not be necessary or even important to the conspiracy, or even made to a co-conspirator, as long as it can be said to advance the goals of the conspiracy in some way." *United States v. Martinez-Medina*, 279 F.3d 105, 117 (1st Cir. 2002). *See also United States v. Rodriguez*, 525 F.3d 85, 101 (1st Cir. 2008) ("A statement is in furtherance of the conspiracy if it tends to advance the objects of the conspiracy as opposed to thwarting its purpose.").

**B.  Co-Conspirator Statements Offered Pursuant to Rule 801(d)(2)(E)**

Defendants Herzzon Sandoval ("Casper"), Edwin Guzman ("Playa"), Cesar Martinez ("Cheche"), and Erick Argueta Larios ("Lobo"), along with dozens of other named and unnamed co-conspirators, are charged with conspiring to conduct the affairs of the criminal enterprise MS-13 through a pattern of racketeering activity, in violation of 18 U.S.C. §1962(d) (Count Two of the Fifth Superseding Indictment). Defendants Martinez and Argueta Larios are also charged with conspiring to distribute cocaine, in violation of 21 U.S.C. §846 (Count Three). Details about the MS-13 conspiracy's pattern of racketeering activity and examples of the various means and methods employed by MS-13 members and co-conspirators are set forth in the Fifth Superseding Indictment. The government has accumulated vast amounts of evidence in the course of investigating the MS-13 racketeering conspiracy, including countless statements of co-conspirators, many of which were captured in audio and video recordings.

In this motion, the government has attempted to set forth each individual co-conspirator statement that it intends to offer at trial, within reason.[1] To the extent the government identifies additional co-conspirator statements that it intends to introduce during the trial, it will provide reasonable notice to defense counsel prior to seeking to admit the statement. The government notes that many of the offered statements may be admissible on other grounds, such as statements of the defendants pursuant to Rule 801(d)(2)(A), non-

---

[1] The government is continuing to refine its trial presentation and may not offer—and/or the witnesses may not testify regarding—all of the co-conspirator statements identified herein. This motion errs on the side of caution to provide additional notice to the Court and counsel.

hearsay statements offered to provide context, and pursuant to one or more of the exceptions to hearsay set forth in Rule 803.[2]

### 1. Co-Conspirator Statements Recorded by CW-1

During the investigation, CW-1 consensually recorded the statements of several MS-13 co-conspirators. Out of the many recordings made by CW-1 during the years-long investigation, the government will seek to introduce approximately a dozen recordings made by CW-1 during this trial. Each of these recordings contain conversations, in Spanish, between MS-13 gang members, including defendants Sandoval, Guzman, Martinez, and Argueta Larios, during which they identify other MS-13 members and discuss MS-13 gang operations and racketeering activity. The statements of the defendants captured in the recordings are admissible against the defendant who made them under Rule 801(d)(2)(A). *United States v. Aviles-Colon*, 536 F.3d 1, 23 (1st Cir. 2008) (stating that under Rule

---

[2] The statements identified herein generally reference co-conspirators by their MS-13 gang name. Often, alleged co-conspirators only referenced other MS-13 members by their gang names, instead of their legal names. The Indictment contains the aliases of the charged co-conspirators, and for the Court's reference, the legal names of the MS-13 members referenced herein, both charged and uncharged, include the following: defendant Herzzon Sandoval, a/k/a "Casper"; defendant Edwin Guzman, a/k/a "Playa," a/k/a "Player"; defendant Cesar Martinez, a/k/a "Cheche," a/k/a "Checha"; defendant Erick Argueta Larios, a/k/a "Lobo"; Luis Solis-Vasquez, a/k/a "Brujo"; Joel Martinez, a/k/a "Animal"; Efrain Yanes-Vasquez, a/k/a "Caballo"; Victor Manuel Ruiz, a/k/a "Matador," a/k/a "Chentino," a/k/a "Vincentino"; Mauricio Sanchez, a/k/a "Tigre"; Jose Hernandez Miguel, a/k/a "Muerto"; Carlos Escobar Fuentes, a/k/a "Flaco"; Francisco Martinez, a/k/a "Chicon"; Arnulfo Lones, a/k/a "Negro"; Alberto Cardoza, a/k/a "Beto," a/k/a "Rebeldon," a/k/a "Rebelde"; FNU LNU, a/k/a "Duque"; FNU LNU, a/k/a "Master"; FNU LNU, a/k/a "Chamuco"; FNU LNU, a/k/a "Extrano"; FNU LNU, a/k/a "Risa"; Hector Enamorado, a/k/a "Vida Loca"; Oscar Duran, a/k/a "Demente"; Noe Perez-Vazquez, a/k/a "Crazy," a/k/a "Big Crazy"; Jose Valles Flores, a/k/a "Mecha"; Carlos Melara, a/k/a "Chuco," a/k/a "Chuchito," a/k/a "Criminal"; Jose Miguel Hernandez, a/k/a "Smiley," a/k/a "Danger"; Jose Vazquez, a/k/a "Little Crazy"; Oscar Ramirez Cornejo, a/k/a "Vago"; Rutilio Portillo, a/k/a "Pantera"; Jose Adan Martinez Castro, a/k/a "Chucky"; and Edwin Manica Flores, a/k/a "Sugar."

801(d)(2)(A), "an out-of-court statement is not hearsay if it is offered against the party and it is the party's own statement"). The recorded statements of MS-13 co-conspirators, including the defendants, are admissible against all of the defendants under Rule 801(d)(2)(E) because all of their statements were made during and in furtherance of the conspiracy, as is evident by the circumstances of the recordings and their content. *Diaz*, 670 F.3d at 348 ("Statements made by a defendant's co-conspirators 'during and in furtherance of the conspiracy' do not qualify as hearsay under Federal Rule of Evidence 801(d)(2)(E)."). Moreover, CW-1's statements are admissible, not for the truth of the matter asserted, but to place the defendants' and co-conspirators' statements into context. *United States v. Cruz-Diaz*, 550 F.3d 169, 177 (1st Cir. 2008) ("Out-of-court statements offered not to prove the truth of the matter asserted but merely to show context—such as a statement offered for the limited purpose of showing what effect the statement had on the listener—are not hearsay.").

At present, the government intends to offer the English-language transcripts of the following recordings into evidence at trial:[3]

    a.    January 25, 2014 consensual recording of Eastside Locos Salvatrucha (ESLS) clique meeting between CW-1; defendant Sandoval, a/k/a Casper; defendant Guzman, a/k/a Player; Muerto; Brujo; Tigre; Flaco; Chicon; Vincentino; Rebelde; Everett Locos Salvatrucha (ELS) members Crazy, Mecha, and Terrible; and Trece Locos Salvatrucha (TLS) member Little Crazy; during which Casper, Player, and others in attendance discuss forging an alliance between their respective cliques in response to demands made by the MS-13 Program run from El Salvador.

    b.    February 14, 2014 consensual recording between CW-1; defendant Martinez, a/k/a "Checha"; and Muerto discussing cocaine transaction.

---

[3] The government will provide the Court with a copy of the transcripts referenced herein at the pretrial conference on January 9, 2018.

c. February 16, 2014 consensual recording of ESLS clique meeting between CW-1; defendant Sandoval, a/k/a Casper; defendant Guzman, a/k/a Player; defendant Martinez, a/k/a Checha; Muerto; Brujo; Tigre; Vincentino; and others during which during which ESLS clique members discuss public drunkenness by certain clique members, including Checha, and how it will not be tolerated; and Player, Casper, and Checha talk about buying a gun and ammunition.

d. June 14, 2014 consensual recording of ESLS clique meeting between CW-1; defendant Sandoval, a/k/a Casper; defendant Guzman, a/k/a Player; defendant Martinez, a/k/a Checha; Caballo; Brujo; Tigre; Flaco; Rebelde; Negro; Chicon; Vincentino; Extrano; Risa; and others during which Player collects dues from clique members; Casper discusses sending money to help MS-13 members in El Salvador; Casper decides to make Extrano a homeboy in ESLS; all of the ESLS members present identify themselves by their gang name; Casper asks Negro about buying a gun for the clique, Checha says it's a 9mm, and Player states how much money the clique has to pay for it.

e. December 8, 2014 consensual recording between CW-1, defendant Argueta Larios, a/k/a "Lobo," Muerto, Crazy, Caballo, and Smiley/Danger discussing cocaine transaction.

f. December 14, 2014 consensual recording between CW-1, Crazy, Negro, and Smiley/Danger discussing Vida Loca's murder of rival 18th Street member Javier Ortiz and his attempted murder of Saul Rivera.

g. December 16, 2014 consensual recordings between CW-1 and Crazy during which Crazy hires CW-1 to drive Vida Loca out of state to avoid law enforcement after his murder of Javier Ortiz and his attempted murder of Saul Rivera; and between CW-1 and Scooby during which Scooby warns CW-1 to be careful because the police were looking for Vida Loca, whose picture was broadcast on the local television news.

h. February 8, 2015 consensual recording of ESLS clique meeting between CW-1; defendant Sandoval, a/k/a Casper; defendant Guzman, a/k/a Player; defendant Martinez, a/k/a Checha; defendant Argueta Larios, a/k/a Lobo; Muerto; Brujo; Chucho; and others during which Lobo explains how he was arrested at Casa Mariachi restaurant and the police seized the clique gun from him; Casper admonishes Lobo for carrying the gun into the restaurant and orders Lobo to buy a new one; Casper praises Checha for staying with Lobo in court after his arrest; and Player determines how much money to collect and how much to distribute to members, like Lobo, who need financial aid.

<ol>
<li value="9" style="list-style-type: lower-alpha">

i. October 2, 2015 consensual recording between CW-1 and Animal during which Animal describes how he killed rival 18th Street gang member Irvin De Paz by stabbing him to death and how he expected to be promoted to homeboy in MS-13 for the murder.

j. October 24, 2015 consensual recording of ESLS clique meeting between CW-1; defendant Sandoval, a/k/a Casper; defendant Guzman, a/k/a Player; defendant Martinez, a/k/a Checha; defendant Argueta Larios, a/k/a Lobo; Muerto; Brujo; Tigre; Flaco; Chicon; Vincentino; Master; Duque; Rebeldon; Negro; and others during which Player and Casper discuss issues with the MS-13 East Coast Program; Casper orders clique members to beat Tigre and Master for 13 seconds for violating clique rules; and Casper orders Lobo to buy a new gun for the clique.

k. December 6, 2015 consensual recording between CW-1; Muerto; defendant Sandoval, a/k/a Casper; and Animal during which Animal, then a member of the Everett Locos Salvatruchas (ELS) clique, asks Casper if he can join the ESLS clique; Casper tells Animal he will talk to the Everetts and work it out; and Casper states that he is going to buy a 9mm gun and ammunition for $900.

l. January 8, 2016 consensual recording of ESLS clique meeting between CW-1; defendant Sandoval, a/k/a Casper; defendant Guzman, a/k/a Player; defendant Argueta Larios, a/k/a Lobo; defendant Martinez, a/k/a Checha; Caballo; Muerto; Animal; Brujo; Chucho; Vincentino; Duque; and others during which clique members promoted Animal to homeboy, or full MS-13 member, for committing violence on behalf of MS-13, including his murder of rival 18th Street gang member Irvin De Paz; Casper directed clique members to beat Animal for 13 seconds to initiate him into the gang; and Lobo, Casper, Player, and other clique members discuss how to protect Animal from law enforcement.

m. December 13, 2015 consensual recording of meeting between CW-1, Chucky, Sugar, and other MS-13 leaders and members at regional gang meeting in Virginia discussing MS-13 gang activities with El Salvador leader.

</li>
</ol>

### 2. Co-Conspirator Statements Made To Cooperating Witnesses

At trial, the government intends to offer testimony of cooperating witnesses, including CW-7 and CW-11, who were members of the MS-13 conspiracy charged in the indictment. Among other things, their testimony will include statements of the defendants and other MS-13 co-conspirators (who will be identified as MS-13 members by the testifying witnesses)

7

describing: the leadership, organizational structure, and operation of MS-13 in local cliques and in El Salvador; enforcement of MS-13's East Coast Program and ESLS clique rules; punishment of MS-13 members who did not follow those rules; promotion of MS-13 members to homeboy, or full member, status for committing criminal acts of violence against rival 18th Street gang members and informants; racketeering acts committed by MS-13 members, including murder, attempted murder, and drug trafficking; and the need to avoid detection by law enforcement and protect MS-13 members who committed violent acts and other crimes.

Like the recorded co-conspirator statements discussed above, these statements, which are described below, all were made by MS-13 members during and in furtherance of the charged racketeering conspiracy. To the extent these statements were made by and are offered against the defendant who made them, they are admissible under Rule 801(d)(2)(A); and to the extent they are offered as co-conspirator statements, they are admissible under Rule 801(d)(2)(E).

At this time, the government seeks to admit the following co-conspirator statements at trial against the defendants:

a.  Brujo's statements to CW-11, CW-7, and other ESLS members describing Vida Loca's murder of rival 18th Street gang member Javier Ortiz and attempted murder of Saul Rivera at an after-hours bar in Chelsea in December 2014.

b.  Crazy's statement to CW-11 that Vida Loca called Crazy from the after-hours bar before the shootings and asked Crazy to bring him a gun.

c.  Crazy's statements to ESLS members, including CW-11 and CW-7, at an ESLS clique meeting a few days after the murder and attempted murder demanding that ESLS members punish Vincentino, who was drinking at the after-hours bar the night before and night of the shootings, for not providing assistance to Vida Loca; and requesting money from ESLS to help Vida Loca leave town to avoid law enforcement.

d. Defendant Sandoval's, a/k/a Casper's, statements at the ESLS clique meeting discussed above ordering that Vincentino be punished with a 13-second beating for not rendering aid to a fellow MS-13 member, and counting out loud to 13 while clique members beat Vincentino.

e. Brujo's and Animal's statements to CW-11 and CW-7 describing their stabbing and attempted murder of an 18th Street gang member in Chelsea in late December 2015; and Brujo's statements to defendant Sandoval, a/k/a Casper, and defendant Guzman, a/k/a Player, about the attempted murder to enhance Animal's status in the ESLS clique.

f. Pantera's statements to CW-11 and other MS-13 members describing an incident in 2007 when he and defendant Sandoval, a/k/a Casper, went out looking for 18th Street gang members to attack, found some in East Boston, and Pantera chased them into an East Boston housing project.

g. Pantera's statements to CW-11 and other MS-13 members describing defendant Sandoval's, a/k/a Casper's, standing order to kill Machete, an 18th Street leader; and an incident in 2007 when Casper, defendant Guzman, a/k/a Player, Pantera, and other MS-13 members tracked Machete down and one of them attempted to kill Machete by shooting him.

h. Defendant Sandoval's, a/k/a Casper's, statements to CW-11 and other ESLS members issuing a green light (order to kill) on Som Popo, an ESLS member who refused to follow clique rules, and directing CW-11 and others to track him down where he worked and murder him.

i. Defendant Sandoval's, a/k/a Casper's, statements to CW-11 in early January 2016 that he wanted CW-11 to give him the clique gun that was in CW-11's possession because there were several 18th Street members nearby.

j. Defendant Sandoval's, a/k/a Casper's, statements to CW-11 that Casper had committed violent crimes on behalf of MS-13.

k. Defendant Martinez's, a/k/a Checha's, statements to CW-11 about a 2008 attack on an 18th Street gang member that occurred on the way from Maverick Station to Checha's house. Checha told CW-11, who was present during the attack and beat the 18th Street member with a bat, that Checha had stabbed the 18th Street member with his machete, hid the machete in his bathroom when he got home, and later discarded it in New Hampshire.

l. Defendant Guzman's, a/k/a Player's, statements to CW-11 following the Maverick Station attack described above directing CW-11 to take a

      taxicab from Checha's house to a car wash after the police left the area and telling CW-11 that he (Player) would pick him up at the car wash and pay for the cab.

m.    Defendant Argueta Larios's, a/k/a Lobo's, statements to defendant Sandoval, a/k/a Casper, requesting that Casper issue a green light on CW-1 because Lobo believed CW-1 caused Lobo to be arrested with a gun outside of Casa Mariachi restaurant in January 2015; and Casper's statements to Lobo refusing to issue the green light on CW-1 without additional proof that CW-1 was an informant.

n.    Defendant Sandoval's, a/k/a Casper's, statements inviting CW-11 and CW-7 to become MS-13 homeboys in ESLS.

o.    Defendant Argueta Larios's, a/k/a Lobo's, and Vincentino's statements to CW-7 about what was expected of him as an MS-13 homeboy, *e.g.*, that CW-7 was expected to go out and attack and kill 18th Street members every weekend; answer all calls from defendant Sandoval, a/k/a Casper, and defendant Guzman, a/k/a Player, the ESLS clique leaders; show up when and where Casper and Player said to if 18th Street members were spotted on the street; attend all clique meetings; report all gang attacks and activity to Casper and Player; and if CW-7 didn't do these things, he would be punished with a 13-second beating.

p.    Defendant Martinez's, a/k/a Checha's, statement to CW-11 that he was selling cocaine that he had purchased from a source in Texas.

q.    Defendant Argueta Larios's, a/k/a Lobo's, statements to CW-7 concerning his source of supply for cocaine.

r.    Defendant Martinez's, a/k/a Checha's, statements to CW-7 about an incident at the Acapulco restaurant where Checha and Brujo attacked a person dressed in red who they thought was an 18th Street gang member.

s.    Defendant Martinez's, a/k/a Checha's, statements to CW-7 and CW-11 in early January 2016 that he was tracking 18th Street members on Main Street in Everett and needed a gun to shoot them.

t.    Defendant Argueta Larios's, a/k/a Lobo's, statements to CW-7 while incarcerated after their arrest that MS-13 leadership in El Salvador had issued a green light on all members of ESLS because they believe CW-1 is an informant and because ESLS had not followed the rules of the East Coast Program.

u.  Defendant Guzman's, a/k/a Player's, statements to CW-7 that he and defendant Sandoval, a/k/a Casper, spoke with MS-13 leaders in El Salvador after Caballo returned to the United States to verify that Caballo had murdered two 18th Street members in El Salvador on behalf of MS-13.

v.  Vago's statements to CW-7 describing an incident on a soccer field in Chelsea where Vago, Brujo, and other MS-13 members attacked and stabbed an 18th Street member.

w.  Animal's statements to CW-7 describing his murder of Irvin De Paz on Trenton Street in September 2015.

x.  Defendant Sandoval's, a/k/a Casper's, statements to CW-7 describing a 2005 incident in Somerville where Casper, Flaco, and another MS-13 member attacked and killed an 18th Street member. Casper told CW-7 that Casper knocked the victim to the ground with a baseball bat, and another MS-13 member beat the victim to death with the bat.

### C. Argument

The extant record establishes by a preponderance of the evidence that (1) the MS-13 conspiracy existed, (2) the defendants were members of the MS-13 conspiracy, (3) the speakers of the statements offered by the government were also members of the MS-13 conspiracy, and (4) that the offered statements were made during and furtherance of the MS-13 conspiracy. Accordingly, the offered co-conspirator statements are admissible against the defendants at trial pursuant to Rule 801(d)(2)(E).[4]

The record is replete with extrinsic evidence that the defendants and the declarants of the offered statements were members of the MS-13 conspiracy. *See Capleton*, 350 F.3d at 241 (requiring some extrinsic proof of conspiracy between defendant and declarant). For example:

---

[4] Some of the offered statements may be admissible on other grounds, such as statements of the defendants pursuant to Rule 801(d)(2)(A), non-hearsay statements offered to provide context, or pursuant to one or more of the exceptions to hearsay set forth in Rule 803.

1. **Testimony of CW-11.** CW-11 was a full status member, or homeboy, with the Eastside Locos Salvatruchas (ESLS) clique of MS-13. All four of the "Group 3" defendants scheduled for trial in January were also homeboys with the ESLS clique. CW-11 will testify about how he met various MS-13 members in Boston after he moved here from Los Angeles in 2007; how he was invited to join ESLS by its leader, defendant Sandoval, a/k/a Casper; how he was initiated into ESLS by clique members who beat him for 13 seconds; and how he attended ESLS meetings and participated in racketeering acts, including attempted murders of rival gang members and drug trafficking, with the defendants and other MS-13 conspirators on behalf of the criminal enterprise.

2. **Testimony of CW-7.** CW-7 was a homeboy with the ESLS clique of MS-13. CW-7 will testify about how he met various MS-13 members, including defendants Argueta Larios, a/k/a Lobo, and Martinez, a/k/a Checha; how he was invited to join ESLS by its leader, defendant Sandoval, a/k/a Casper; how he was initiated into ESLS by clique members who beat him for 13 seconds; and how he attended ESLS meetings and participated in racketeering acts, such as attempted murders of rival gang members, with the defendants and other MS-13 conspirators on behalf of the criminal enterprise.

3. **Testimony and photographs identifying MS-13 members.** Various witnesses, including CW-11, CW-7, and witnesses who participated in the investigation of the MS-13 conspiracy generally and the defendants specifically, will provide testimony identifying the defendants and other co-conspirators as members and leaders of MS-13.

4. **Audio and video recordings of MS-13 meetings.** During the investigation, law enforcement consensually recorded several MS-13 clique meetings, including meetings where members were "beat in" or initiated into the gang and meetings discussing gang activities and operations. These recordings and related testimony from witnesses who participated in the investigation will establish that the defendants and others were members of the MS-13 conspiracy.

Further, this and similar evidence proves that the offered statements all were made during and in furtherance of the MS-13 conspiracy. The recorded MS-13 clique meetings occurred during the period of the conspiracy and were held for the purpose of initiating new members, disciplining current members, discussing clique business, communicating with MS-13 leaders locally and in El Salvador, and planning acts of violence against rival 18th Street gang members and those believed to be informants to further the objectives of the MS-13 conspiracy. Similarly, the statements made to the cooperating witnesses all occurred during

the time period of the conspiracy and concerned matters involving the MS-13 conspiracy and its objectives.

Finally, recognizing the government's duty to "connect[] up" the proffered co-conspirator statements with extrinsic proof establishing that the defendants and declarants were members of a conspiracy, *Petrozziello*, 48 F.2d at 23, and in view of the voluminous amount of evidence that is expected to be introduced at trial, the government will attempt to order its proof such that the co-conspirators' statements are temporally proximate to the extrinsic proof establishing their admissibility.

## CONCLUSION

For all of the foregoing reasons, the government respectfully requests that the Court rule that statements made by the defendants' co-conspirators are provisionally admissible as substantive evidence at trial pursuant to Federal Rule of Evidence 801(d)(2)(E), subject to the Court's final *Petrozziello* ruling at the close of evidence.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:  */s/ Kelly Begg Lawrence*
KELLY BEGG LAWRENCE
CHRISTOPHER POHL
Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the Court's Electronic Court Filing (ECF) system on January 8, 2018, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

By:  */s/ Kelly Begg Lawrence*
KELLY BEGG LAWRENCE
Assistant United States Attorney