# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ERICK ARGUETA LARIOS, a/k/a "Lobo," <br><br> Petitioner, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Respondent. | Criminal Action No. <br> 15-10338-FDS-14 |

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO VACATE

**SAYLOR, C.J.**

Petitioner Erick Argueta Larios has moved to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on the ground that he received ineffective assistance of counsel at his trial and sentencing. For the reasons set forth below, the motion will be denied.

**I.   Background**

On May 15, 2017, a federal grand jury returned a fifth superseding indictment charging Larios and others with conspiracy to conduct enterprise affairs through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d). Larios and others were also charged with conspiracy to distribute, and to possess with intent to distribute, cocaine in violation of 21 U.S.C. §§ 841(a)(1), 846.

On February 26, 2018, following a trial, a jury convicted him of the racketeering charge and acquitted him of the drug charge. He was sentenced on November 19, 2018, to 15 years in prison.

Larios timely noticed an appeal, and on June 8, 2021, the Court of Appeals affirmed his conviction and sentence. *United States v. Sandoval*, 6 F.4th 63, 120 (1st Cir. 2021). Final judgment was entered on June 8, 2021, and the mandate issued on August 6, 2021. Larios timely filed a petition for a writ of certiorari with the Supreme Court, which denied the petition on January 10, 2022.

On August 26, 2022, Larios filed a motion requesting an extension of time to file a § 2255 motion on the ground of equitable tolling. In an order dated September 14, 2023, this Court denied that motion without prejudice.

On August 19, 2024, Larios filed this motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

## II.     Legal Standard

Under 28 U.S.C. § 2255, a prisoner in custody "claiming the right to be released" may file a motion to vacate, set aside, or correct a sentence. The relief requested may be granted on the grounds that the "petitioner's sentence (1) was imposed in violation of the Constitution; (2) was imposed by a court that lacked jurisdiction; (3) exceeded the statutory maximum; or (4) was otherwise subject to collateral attack." *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998). The petitioner bears the burden of establishing by a preponderance of the evidence that he is entitled to relief under § 2255. *Id.*; *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). In deciding whether a petitioner has met that burden, the court generally must accept his factual statements as true, "but . . . need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

### A.     Period of Limitation and Equitable Tolling

Congress has established a one-year period of limitation governing motions for relief

under § 2255.  28 U.S.C. § 2255(f).  The one-year period runs from the latest of one of four dates:

>(1) the date on which the judgment of conviction becomes final;
>
>(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
>(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.*

A court may, in some circumstances, extend the one-year limitation filing period under a theory of equitable tolling.  A petitioner bears the burden of demonstrating the basis for equitable tolling by making two showings:  "1) that he has been pursuing his rights diligently, and 2) that some extraordinary circumstance stood in his way and prevented him from timely filing." *Figueroa v. United States*, 2012 WL 6626646, at *3 (D. Mass. Dec. 18, 2012) (quoting *Ramos-Martinez v. United States*, 638 F. 3d 315, 322-23, 325 (1st Cir. 2011)).

      B.      <u>**Procedural Bars**</u>

A petitioner in a motion filed pursuant to § 2255 cannot reassert arguments raised on direct appeal.  As the First Circuit held in *United States v. Doyon*, "[t]o the extent that [petitioner] is reasserting the argument that he made on direct appeal, he is barred from relitigating that issue on collateral review."  16 F. App'x 6, 9 (1st Cir. 2001) (citing *Singleton v. United States*, 26 F.3d 233, 240 (1st Cir. 1994)).  To the extent that a petitioner intends to "add new elements to his constitutional claim that he failed to raise on direct appeal, [petitioner] is required to show cause for the failure and actual prejudice." *Id.*

### C. Ineffective Assistance of Counsel

A petitioner claiming a violation of the Sixth Amendment right to effective assistance of counsel must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the [petitioner] by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To succeed on such a claim, a petitioner must establish both (1) that his counsel provided deficient assistance and (2) that he suffered prejudice as a result. *Id.*

The first prong requires the petitioner to demonstrate that his counsel's performance fell below an objective standard of reasonableness. *Id.* at 689. A court making that evaluation "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* A petitioner may overcome that presumption by demonstrating that counsel's alleged errors were so serious that his performance "fell below an objective standard of reasonableness under the circumstances." *Sleeper v. Spencer*, 510 F.3d 32, 38 (1st Cir. 2007). The second prong requires the petitioner to show that counsel's deficient performance resulted in "prejudice"—that is, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

## III. Analysis

### A. Period of Limitation and Equitable Tolling

Petitioner's motion is not timely under any of the four prongs of § 2255(f). As to the first prong, a conviction becomes final when either the Supreme Court denies a writ of certiorari or when the time to file such a writ expires. *Clay v. United States*, 537 U.S. 522, 525 (2003). Here, the Supreme Court denied the petition for a writ of certiorari on January 10, 2022. Petitioner filed his motion on August 19, 2024, more than two and a half years after his judgment became final. Therefore, the motion is untimely under the first prong of § 2255(f)(1) by more than a year and a half.

As to the second prong, petitioner does not contend that governmental action in violation of the Constitution or laws of the United States created an impediment to making his motion. As to the third prong, petitioner does not contend that he is asserting any right newly recognized by the Supreme Court. As to the fourth prong, petitioner does not contend that any of the facts supporting his claim were newly discovered or could have been previously discovered through the exercise of due diligence. Therefore, the second, third, and fourth prongs of § 2255(f) are not relevant.

A court may extend the one-year limitation filing period under a theory of equitable tolling if a petitioner shows that "he has been pursuing his rights diligently" and "some extraordinary circumstance stood in his way and prevented him from timely filing." *Figueroa*, 2012 WL 6626646, at *3 (quoting *Ramos-Martinez*, 638 F. 3d at 322-23, 325).

Here, petitioner contends that the "instant motion is untimely due to the [Bureau of Prisons] officials withholding his legal materials, which impeded the timely filing" and that he "had previously made this Court aware of those circumstances, which may entitle him to equitable tolling." (Mot. to Vac. at 23). In his previous filing to the Court, he stated that he had been placed "in a restriction unit by the administration." (ECF No. 3287). It is perhaps plausible, therefore, that petitioner has diligently pursued his rights since his conviction became final.

Nevertheless, equitable tolling is not warranted. Even assuming that petitioner has been pursuing his rights diligently since his conviction became final in January 2022, he has not demonstrated "extraordinary circumstances," because he has failed to explain how his placement in a restriction unit has "caused the untimely filing." *See Good v. Gray*, 2022 WL 2704467, at *4 (D. Mass. July 12, 2022); *Blue v. Medeiros*, 913 F.3d 1, 8 (1st Cir. 2019) ("It is up to the

5

petitioner to establish a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing."); *see also Baldayaque v. United States*, 338 F.3d 145, 152 (2d Cir. 2003) ("[T]he usual problems inherent in being incarcerated do not justify equitable tolling.").

Nor does petitioner make allegations regarding specific impediments that prevented him from timely filing; rather, he makes a generalized claim about his restricted access to his personal belongings. *See, e.g.*, *Hisert*, 2021 WL 1178301, at *1 n.1 (noting that the First Circuit dismissed a cross-appeal on timeliness grounds even though plaintiff contended that the COVID-19 pandemic justified his untimely filing, because he did not "show[] any *specific* impediment to timely filing that would warrant equitable relief" (emphasis added)). That is insufficient to demonstrate extraordinary circumstances. Thus, because equitable tolling is "the exception rather than the rule," petitioner's unparticularized claim of extraordinary circumstances is insufficient to justify equitable tolling. *Riva v. Ficco*, 615 F.3d 35, 39 (1st Cir. 2010); *see also Enamorado v. United States*, 2024 WL 1641887, at *3 (D. Mass. Apr. 16, 2024) (no equitable tolling for codefendant who similarly failed to establish specific extraordinary circumstance for late filing); *United States v. Melara*, 2022 WL 1157374, at *2 (D. Mass. Apr. 19, 2022) (same).

In summary, the motion to vacate was filed outside the relevant time period, and petitioner has not shown that the limitation period should be extended based on equitable tolling. The claims are therefore time-barred.

### B.  Procedural Bars

Even if the § 2255 motion was not time-barred, three of petitioner's eight claims are procedurally barred. It is well-established that "issues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion." *Singleton*, 26 F.3d at 240.

Here, petitioner first contends that counsel failed to object to the sufficiency of the

evidence to prove that when he joined the ESLS clique of MS-13, he agreed that two or more murders would be committed by members of ESLS. (Mot. to Vac. at 6-7). Counsel objected to the sufficiency of the evidence on that basis at trial and raised the claim on appeal, where the First Circuit squarely addressed and rejected it. *Sandoval*, 6 F.4th at 75-77.

Second, petitioner contends that counsel failed to cite case law in support of his objection to the testimony of FBI Special Agent Jeffrey Wood concerning the mission and operation of MS-13. (Mot. to Vac. at 7-8). The First Circuit addressed and rejected that claim, holding that this Court had not abused its discretion in finding Agent Wood qualified to offer expert testimony based on his experience investigating MS-13. *Sandoval*, 6 F.4th at 84.

Third, petitioner contends that trial counsel failed to object to the inclusion of reasonably foreseeable relevant conduct—specifically, "three incidents involving the alleged murder or attempted murders and accessory after the fact"—in calculating his Guidelines sentencing range. (Mot. to Vac. at 19-20). That claim was raised at sentencing and on appeal and rejected by the First Circuit. *Sandoval*, 6 F.4th at 105.

Because petitioner raises three of the same grounds that he raised on direct appeal, and the First Circuit found against him on the merits of those claims, he cannot relitigate them in a habeas petition. Accordingly, those three claims are procedurally barred.

### C.  Ineffective Assistance of Counsel

Finally, even if the § 2255 motion was not time-barred, his claim for ineffective assistance of counsel is both procedurally defaulted and without merit.

#### 1.  Petitioner's Claims Have Been Procedurally Defaulted

Petitioner could have, but did not, raise his claims on direct appeal. "[A] defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and

7

prejudice or actual innocence." *Berthoff v. United States,* 308 F.3d 124, 127-28 (1st Cir. 2002) (citing *Bousley v. United States,* 523 U.S. 614, 622 (1998)). Here, petitioner offers no argument regarding the cause for his default. Because the claims are procedurally defaulted, the petition must be denied.

### 2.     Petitioner's Claims Fail on the Merits

Petitioner's claims also fail on the merits. Under *Strickland*, a petitioner seeking relief based on ineffective assistance of counsel must show both (1) deficient performance by counsel and (2) prejudice to the defense. 466 U.S. at 687. Petitioner here cannot make either showing.

#### a.     Jencks Act Continuance

Petitioner asserts that counsel failed to seek a continuance to investigate an alleged Jencks Act violation in connection with a written "threat assessment" the FBI prepared for CW-1. (Mot. to Vac. at 8-10). Counsel sought production of the threat assessment prior to trial and again when Agent Wood mentioned it during his testimony. The government produced a redacted copy of the threat assessment several days after that testimony. Counsel argued that the threat assessment constituted Jencks Act material that should have been disclosed prior to cross-examination and objected to the government's failure to produce an unredacted version. The Court asked counsel whether he wanted a continuance or what other relief he sought. Counsel indicated he did not want a continuance at that point "given where we are in the trial" but noted that, had the threat assessment been timely disclosed, it could have been useful material for cross-examination of Agent Wood. The Court overruled counsel's objection to the late disclosure and trial continued. *See Sandoval*, 6 F.4th at 90.

Petitioner does not explain why counsel's decision to forgo a continuance was objectively unreasonable. During his cross-examination of Agent Wood, counsel elicited testimony that "CW[-]1 had committed some serious violent crimes throughout the investigation," that CW-1

8

had made false representations about these crimes to the FBI, and that CW-1 was ultimately terminated from the witness protection program. *Sandoval*, 6 F.4th at 88-89. "The jury thus was not barred—through the limits on cross-examination of Wood—from being given sufficient information from which it could conclude that Wood's credibility might be undermined by the fact that he allegedly missed the fact that CW-1 had been committing serious crimes and then lied to Wood about doing so." *Id.* at 89 (cleaned up).

Counsel's decision not to further delay the trial to explore essentially cumulative evidence was an objectively reasonable professional judgment. *See Johnson v. Bell*, 525 F.3d 466, 488 (6th Cir. 2008) ("Because additional time would not necessarily have aided [the defendant's] defense, we cannot say that his counsel's failure to seek a continuance fell below an objective standard of reasonableness such to constitute deficient performance."). Thus, petitioner cannot demonstrate that counsel's failure to seek a continuance caused him prejudice.

### b. Limiting Instruction for CW-1's Statements

Petitioner contends that counsel should have requested an instruction limiting the jury's consideration of out-of-court statements made by CW-1 and admitted in evidence. (Mot. to Vac. at 13-14). The statements at issue were made by CW-1 during the investigation while he was posing as an MS-13 member. The Court admitted the statements, finding that they were not being offered for the truth of the matter asserted, but to provide context for admissible coconspirator statements.

Petitioner and his codefendants challenged that ruling on appeal, arguing that CW-1's statements were improperly admitted for the truth of the matter asserted. The First Circuit disagreed, finding that there was a non-hearsay rationale supporting the statements' admission. *See Sandoval*, 6 F.4th at 94-95. Furthermore, it noted that "the admission of these statements is, if error at all, not the sort of indisputable error that warrants correction on plain error review."

*Id.* at 95 (cleaned up). In light of that ruling, petitioner cannot show either that counsel was ineffective for failing to seek limitations on the jury's consideration of properly admitted statements or that the outcome of the trial would have been different if such an instruction had been given.

### c.     Interview or Subpoena of CW-1

Petitioner next asserts that counsel should have attempted to interview CW-1 prior to trial or call him as a witness. (Mot. to Vac. at 15-16). He contends that if counsel had done so, he "would have been able to impeach CW-1 by showing the jury that the Government's star witness was committing crimes and violent acts on his own under the Government's nose." (*Id.* at 17). That claim fails for multiple reasons.

First, "reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005). Counsel here was in possession of substantial discovery that detailed CW-1's criminal activities, and it was highly unlikely that a pretrial interview with CW-1 would have yielded anything of significant use.

Second, counsel elicited from Agent Wood substantially the same testimony that he contends would have been obtained from CW-1. Petitioner therefore cannot establish prejudice from counsel's decision not to interview or subpoena CW-1. *United States v. Baez*, 2011 WL 1811052, at *3 (D.R.I. May 12, 2011) (stating that petitioner must show how counsel's failure to investigate or call a witness prejudiced his case) (citing *United States v. Porter*, 924 F.2d 395, 397 (1st Cir. 1991) (rejecting claim that counsel's failure to interview witnesses constituted ineffective assistance absent any showing as to how that failure deprived the defendant of a viable defense)).

Third, discrediting CW-1 without having to call him as a witness likely benefitted the

defense. Had CW-1 testified, it is certainly possible that he could have provided the jury substantial detail about the criminal activities of petitioner himself and MS-13 generally. It was a reasonable professional judgment by counsel to forgo calling CW-1 in light of that risk. *See Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."); *Lema v. United States*, 987 F.2d 48, 54 (1st Cir. 1993) ("The decision whether to call a particular witness is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony."). Thus, counsel's decision not to interview or call as a witness CW-1 does not support an ineffective counsel claim.

### d.     Judicial Factfinding at Sentencing

Petitioner next contends that counsel improperly failed to object to application of sentencing enhancements based on judicial factfinding, which he contends violated *Alleyne v. United States*, 570 U.S. 99 (2013) (holding that "any fact that necessitates an increase in the mandatory minimum sentence for a crime . . . must be found by the jury beyond a reasonable doubt"). (Mot. to Vac. at 20-22). That claim fails as a matter of law because petitioner was not subject to a statutory mandatory minimum sentence under the offense of conviction. *See* 18 U.S.C. §§ 1962(d), 1963(a).

### e.     Sanchez Testimony

Finally, petitioner contends that counsel should have called Mauricio Sanchez as a witness at sentencing to testify that petitioner "had stepped down and was withdrawing from the organization for religious reasons." (Mot. to Vac. at 22). But petitioner does not provide any evidence or support suggesting that Sanchez would have testified in this way. Moreover, to the extent petitioner's claim focuses on counsel's failure to call Sanchez as a witness at his sentencing, he has not attempted to show any prejudice. Thus, counsel's failure to call Sanchez

11

does not constitute ineffective assistance of counsel.

## IV.     Conclusion

For the foregoing reasons, the motion of petitioner Erick Argueta Larios to vacate, set aside, or correct his sentence is DENIED.  Petitioner's motion to appoint counsel is DENIED as moot.

**So Ordered.**

                                                      /s/ F. Dennis Saylor IV
                                                      F. Dennis Saylor IV
                                                      Chief Judge, United States District Court

Dated:  March 26, 2025